UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

       Plaintiff/Respondent,

v.

Elena Lev Polukhin,

       Defendant/Petitioner.

MEMORANDUM OPINION
AND ORDER
Criminal No. 15-261 ADM/BRT

_____

Michael L. Cheever, Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Andrew S. Feldman, Esq., Feldman Firm PLLC, Miami, FL, and Marc Prokosch, Esq., Marc Prokosch Law LLC, Roseville, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Elena Lev Polukhin's ("Polukhin") Petition for Writ of Coram Nobis [Docket No. 91].  The Petition seeks a writ of coram nobis to vacate Polukhin's conviction, sentence, and restitution order.  Plaintiff United States of America (the "Government") has filed a Response [Docket No. 94] opposing the Petition.  For the reasons stated below, Polukhin's Petition is denied.

## II.  BACKGROUND

**A.  Indictment**

In September 2015, Polukhin, a physician, was charged in a 30-count Indictment with health care fraud conspiracy, soliciting and receiving kickbacks, health care fraud, aggravated identity theft, and unlawful distribution and dispensing of controlled substances.  Indictment [Docket No. 1] ¶¶ 17-26.  Polukhin retained two highly experienced federal criminal defense

attorneys to represent her.

**B. Plea Agreement**

On March 9, 2016, Polukhin entered a plea of guilty to one count of soliciting and receiving kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1)(A). See Change of Plea Hr'g [Docket No. 39]; Plea Agreement [Docket No. 40] ¶ 1. In return for Polukhin's plea of guilty, the Government agreed to dismiss the remaining 29 counts in the Indictment. Plea Agreement ¶ 1.

Polukhin admitted in the Plea Agreement that from June 2012 to March 2014, she knowingly received kickbacks from Best Aid Pharmacy ("Best Aid") in return for writing prescriptions for topical pain-relief creams to patients who were Medicare and Medicaid beneficiaries. Plea Agreement ¶¶ 1–2. Best Aid submitted claims for reimbursement to Medicare and Medicaid plans for the prescriptions that Polukhin had written. Id. ¶ 2. Polukhin also admitted that the total amount of kickback payments she received from Best Aid was $43,885, and that Best Aid received a total of $463,052.33 in claim reimbursements from Medicare and Medicaid plans for the prescriptions she had written. Id. During the time of the scheme, Polukhin was in a romantic relationship with Best Aid's part owner and manager, Boris Rabichev ("Rabichev"). Plea Tr. [Docket No. 43] at 32–33.

The claims that Best Aid submitted for reimbursement falsely stated that Best Aid compounded the ingredients for the pain-relief creams using powder from individual capsules, when bulk powders had actually been used. See United States v. Polukhin, 896 F.3d 848, 850 (8th Cir. 2018). As a result, Best Aid received over $421,000 more in reimbursements than it would have had accurate claims been submitted. Id. at 850–51. The Plea Agreement set forth

that Polukhin maintained that her relevant conduct for sentencing purposes was limited to the kickbacks she received, while the Government maintained that Polukhin was also responsible for the amount of loss caused to Medicare and Medicaid through the fraudulent reimbursement scheme. See Plea Agreement ¶ 7(b); Plea Tr. at 19–20.

The Plea Agreement includes the following agreement about the amount of restitution that the Court might order:

> **Restitution.** The defendant understands and agrees that the defendant may be ordered to make restitution to the victims of her crime. The defendant understands and agrees that the Court may order her to make restitution for amounts above and beyond those directly caused by the offense of conviction. The United States maintains that the amount of restitution is $421,329.19. The defendant reserves the right to contest this restitution amount. The defendant understands and agrees that the Court will determine the amount of restitution and may order the defendant to make restitution for amounts beyond those directly caused by the offense of conviction if the Court determines at sentencing that the United States has established such amounts as compensable under the applicable restitution statutes.

Plea Agreement ¶ 10.

**C. Plea Hearing**

During the change of plea hearing on March 9, 2016, the Court engaged in a lengthy Rule 11 colloquy lasting almost an hour. See Plea Tr. at 1, 43. The Court asked Polukhin if she was satisfied with her attorneys' representation, and she answered, "I love them." Id. at 7. Polukhin also said that she had enough time to talk with her lawyers about the case and that they had answered all of her questions. Id. Polukhin was told she could consult with her attorneys at any time during the proceeding, and she did so. Id. at 5, 18, 34-35.

After a conducting a paragraph-by-paragraph review of the Plea Agreement with

Poluhkin, the Court stated, "Well, you seem to be tracking just fine and understanding this well, but are there any questions, any areas of uncertainty or grayness that you'd like me to go back over?" Id. at 30. Poluhkin responded, "No," and confirmed that she was "a hundred percent clear on what [her] obligations [were] and what [she was] pleading guilty to." Id.

Before accepting her guilty plea, the Court asked Polukhin if she was in fact guilty of the offense, and she confirmed that she was. Id. at 39-40. The Court warned Polukhin that once she pled guilty, "it closes the door on whether you can change your mind about going to trial." Id. at 40. Polukhin stated that she was sure she wanted to plead guilty. Id. Polukhin then entered and the Court accepted her plea of guilty to Count 22 of the Indictment. Id. at 42.

### D. Sentence and Appeal

Polukhin was sentenced on December 28, 2016. The parties agreed that the Court could rely on their sentencing submissions to resolve factual disputes rather than having an evidentiary hearing. Sentencing Tr. [Docket No. 76] at 22–23, 27–29.

The Court began the sentencing hearing by addressing a September 14, 2106 letter [Docket No. 45] Polukhin had sent to the Court after her guilty plea. Id. at 3. In the letter, Polukhin stated, "I deny any intent to commit crime, defraud US Government or anybody else." When asked about the letter, Polukhin stated that she "wanted to be very clear that I had absolutely no intent to commit any crime." Sentencing Tr. at 4–5. The Court responded that it did not "sentence people who make mistakes. They have to be guilty of the offense." Id. at 5. The Court gave Polukhin an opportunity to withdraw her guilty plea, stating, "I'm not going to go forward if there's any uncertainty in your mind about whether or not you're guilty of this offense." Id. at 5. Polukhin clarified that she was not "backing off" her guilty plea and that she

was guilty of the offense. Id. at 6–8. With that assurance, the Court then proceeded with the sentencing hearing.

Polukhin contested at sentencing the amount of loss she owed for restitution, arguing that the reimbursement fraud by Best Aid was separate from the kickbacks she received. Def.'s Sentencing Br. [Docket No. 51 at 7–8]; Def.'s Reply Br. [Docket No. 53 at 1–3]. The Court rejected this argument and found that Polukhin participated in a single conspiracy that included fraudulent billing by Best Aid. Sentencing Tr. at 29–30. In reaching this conclusion, the Court explained:

> I think I have a sufficient understanding of the scheme involved here and I do view it as one of healthcare fraud rather than separate frauds of kickbacks which was a part of the healthcare fraud as well as a reimbursement scheme. Clearly there was a relationship between Rabichev and Polukhin which made this scheme come into fruition. Dr. Polukhin was in the position of being the feeder for the prescriptions which set up the healthcare fraud to happen and part of that scheme was the kickbacks that came back.

Id.

Polukhin was sentenced to a custodial term of 18 months followed by a one-year term of supervised release. Sentencing J. [Docket No. 60] at 2–3. In addition, restitution was ordered in the amount of $421,329.19, to be owed jointly and severally with Rabichev and Best Aid pharmacist Richard Wayne Custer ("Custer"). Id. at 6–7; Am. J. [Docket No. 79] at 7. Polukhin appealed the restitution order, and the Eighth Circuit affirmed on July 19, 2018. See Polukhin, 896 F.3d at 854.

In December 2018, the Government filed a notice in this case confirming it had collected the full $421,329.19 owed by Polukhin for restitution and a special assessment. See Satisfaction Monetary Imposition [Docket No. 88]. Polukhin was released from prison in April 2018, and

completed her 1-year term of supervised release on April 26, 2019.

**E. Coram Nobis Petition**

On May 26, 2020, more than a year after her supervised release had expired, Polukhin filed a petition for writ of coram nobis as a separate civil case in this Court. See Polukhin v. United States, No. 20-1244 (D. Minn.) ("Civil Case"). On September 16, 2020, the Court dismissed the petition because it was improperly filed as a civil proceeding, but allowed the petition to be refiled in this criminal case. See Order [Civil Case Docket No. 16].

On October 7, 2020, Polukhin filed the Petition in this case. She seeks a writ of error coram nobis to vacate her conviction, sentence, and order of restitution. Petition at 2, 17. The Government opposes the Petition, arguing in is untimely, procedurally barred, and fails on the merits.

### III.  DISCUSSION

**A.  Legal Standard**

A person who has been convicted of a federal crime and is no longer in federal custody may seek a writ of error coram nobis to set aside their conviction and sentence. United States v. Morgan, 346 U.S. 502, 505–06 (1954); United States v. Little, 608 F.2d 296, 299 (8th Cir. 1979). Coram nobis relief is "substantially equivalent" to post-conviction relief under 28 U.S.C. § 2255. Little, 608 F.2d at 299. The main difference between the two remedies is that coram nobis relief is available when the defendant is no longer in custody, whereas custody is a prerequisite for § 2255 relief. Id.; United States v. Camacho-Bordes, 94 F.3d 1168, 1172 n.6 (8th Cir. 1996).

The Supreme Court has cautioned that a writ of coram nobis is an "extraordinary remedy" that should be allowed "only under circumstances compelling such action to achieve

justice" and to correct errors "of the most fundamental character." Morgan, 346 U.S. at 511–12. "Coram nobis relief has been called the criminal-law equivalent of the Hail Mary pass in American football." Baranski v. United States, 880 F.3d 951, 954 (8th Cir. 2018) (citing United States v. George, 676 F.3d 249, 251 (1st Cir. 2012)). This is because "[t]he further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment. . . . The writ of error coram nobis lies at the far end of this continuum." Id. (quoting George, 676 F.3d at 258). Given that coram nobis relief is at the far end of the remedial spectrum and is subject to the stiffest requirements for vacating a judgment, the requirements for obtaining coram nobis relief cannot be less stringent than those required for § 2255 relief. Id. at 956.

**B. Poluhkin's Petition**

    **1. Timeliness**

The Government argues Polukhin's coram nobis petition must be dismissed as untimely. The Court agrees. A coram nobis petition is not subject to a statute of limitations. Kovacs v. United States, 744 F.3d 44, 54 (2d Cir. 2014). However, "[t]o qualify for coram nobis relief, [a] petitioner must have [a] valid reason for not attacking [the] conviction earlier." United States v. Estrada-Perez, No. 02-403(3) DSD, 2011 WL 2965249, at *2 (D. Minn. July 22, 2011) (quoting United States v. Shoupe, 299 F. App'x 610, 610-11 (8th Cir. 2008)); see also Kovacs, 744 F.3d at 54 ("[T]he petitioner must demonstrate sound reasons for any delay in seeking relief. The critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay.") (internal citation and quotation marks omitted).

Here, Polukhin's judgment became final on October 17, 2018, ninety days after the

Eighth Circuit affirmed this Court's judgment. She was released from custody on April 26, 2019, when she completed her supervised release. She did not file a § 2255 motion while in custody and did not file her coram nobis petition until May 26, 2020, more than a year after she was released. Even that late date is suspect as the operative filing date since the Petition was inappropriately filed at that time as a civil rather than criminal proceeding. The Petition was not filed in this criminal proceeding until October 7, 2020.

Polukhin does not provide any reason, much less a justifiable one, for why she waited nearly two years after her judgment became final to challenge her conviction and restitution order. She notes that she could not have filed a coram nobis petition while in custody and could not have filed a § 2255 motion after she was released from custody. While this is true, Poluhkin does not explain why she failed to pursue either remedy until 19 months after her judgment became final, or why she waited more than a year after her release to file her coram nobis petition.

A § 2255 movant must seek relief within one year from when the judgment becomes final. 28 U.S.C. § 2255(f)(1). Although Congress has not imposed this procedural requirement on coram nobis petitioners seeking post-conviction relief, Polukhin should not be permitted to pursue coram nobis relief with less diligence than that required by a § 2255 movant unless she has a valid reason for not attacking her conviction and judgment earlier. See Baranski, 880 F.3d at 956 (holding requirements for coram nobis relief cannot be less stringent than for § 2255 relief). Because Polukhin has failed to show a justifiable reason for the delay, the Petition is dismissed as untimely.

### 2. Merits

Even if the Petition had been timely filed, it would fail on the merits. None of the four claims raised in the Petition entitle Polukhin to coram nobis relief.

#### a. Claim One: Ineffective Assistance of Counsel as to Plea Agreement

In Claim One, Polukhin argues her former counsel provided ineffective assistance when representing her with respect to the Plea Agreement. To prevail on a claim of ineffective assistance of counsel, a prisoner must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Polukhin contends her counsel rendered ineffective assistance by entering into a plea agreement that allowed the Government to seek restitution beyond what the federal restitution statutes authorized. In the Plea Agreement, the parties agreed that "the Court will determine the amount of restitution and may order the defendant to make restitution for amounts beyond those directly caused by the offense of conviction if the Court determines at sentencing that the United States has established such amounts as compensable under the applicable statutes." Plea Agreement ¶ 10. Polukhin argues that absent this provision, the Government would have been limited to restitution for her offense of conviction (soliciting and receiving kickbacks) which would have been slightly over $40,000. Polukhin contends that had she "understood the potential consequences of the written plea agreement, she never would have agreed to wager hundreds of Thousands (sic) of dollars at sentencing." Pet'n at 9.

Polukhin has not shown that counsel's performance fell below an objective standard of

reasonableness.  The Victim and Witness Protection Act authorizes a court to "order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."  18 U.S.C. § 3663(a)(1)(A).  Here, the restitution provision agreed to by the parties in the Plea Agreement authorized the Court to order restitution for amounts above the kickback offense if the Court determined at sentencing that such amounts were compensable under applicable restitution statutes.  This provision gave Polukhin the benefit of pleading guilty to a single kickback charge, and also satisfied the Government's objective of ensuring that restitution would be ordered on Polukhin's conduct to the extent restitution was available for other crimes she committed.  See Gov't Mem. Opp'n at 3–4.

Polukhin avers that had she known there was a real possibility that she would be required to pay $421,329.19, she would not have entered into the Plea Agreement.  Polukhin Decl. [Docket No. 91, Attach. 1] at 1.  However, she does not claim this was due to a failure of explanation from her attorneys.  The Plea Agreement and Polukhin's sworn testimony at the plea hearing show she was fully informed that the Government would be seeking over $400,000 in restitution.  The Plea Agreement expressly states:  "The defendant understands and agrees that the Court may order her to make restitution for amounts above and beyond those directly caused by the offense of conviction.  The United States maintains that the amount of restitution is $421,329.19."  Plea Agreement ¶ 10.

The Court reviewed this provision with Polukhin at the plea hearing, and Polukhin confirmed under oath that she understood the provision:

> COURT:   Then, turning to page 8, paragraph 10 talks about restitution.  It says that you understand and agree that you'll be ordered to make restitution to the victims of this offense.  You state that you understand that I may order you to make restitution of

10

> amounts even above and beyond those directly caused by the offense. The United States is arguing that the amount of restitution in this case is $421,329.19. Your attorneys are reserving the right to contest that amount, to tell me that there are other considerations or deductions, that that's the wrong amount for whatever reason. Again, I'll consider those arguments later and make a determination. And I may in fact, it says under the agreement, order you to make restitution beyond the amounts directly caused by the offense if I determine that the United States has established the amounts as compensable under the statutes which apply to this restitution. So that will be a legal issue I'll be deciding. Do you understand?
>
> POLUKHIN: I do.

Plea Tr. at 26. Polukhin also confirmed to the Court that she was "a hundred percent clear on what [her] obligations [were] and what [she was] pleading guilty to." Id. at 30.

Even if Polukhin could show that her counsel's performance fell below an objective standard of reasonableness, she has not shown that but for counsel's errors the result would have been different. Polukhin makes no effort to show she would have succeeded at trial and somehow avoided paying the amount of restitution that was ordered here.

### b. Claim Two: Evidence Poluhkin's Conduct Caused Loss of $421,329.19

In Claim Two, Polukhin argues the restitution order must be vacated because no evidence at the sentencing hearing showed that Polukhin's act of referring prescriptions to Best Aid caused the loss of $421,329.19 to Medicare and Medicaid.

This claim failed on direct appeal. The Eighth Circuit held that the evidence was sufficient to support a reasonable inference "that Polukhin, as the feeder for the prescriptions, knew about the fraudulent reimbursement scheme that relied on the prescriptions, and that she voluntarily joined a conspiracy that would benefit her financially through her relationship with Rabichev." Polukhin, 896 F.3d at 853 (internal quotation marks omitted). The Eighth Circuit

11

concluded that "[b]ecause the conspiracy to defraud directly and proximately caused Medicare and Medicaid to lose $421,329.19, the district court was authorized to order Polukhin to make restitution in that amount." Id.

### c. Claim Three:  Ineffective Assistance with Respect to Guilty Plea

In Claim Three, Polukhin argues that she was deprived of her Sixth Amendment right to effective assistance of counsel because it was clear during the plea hearing that her plea of guilty was not knowing and intelligent.

To show ineffective assistance of counsel in the context of a guilty plea, a defendant "must establish:  (1) counsel's performance fell below the Strickland standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial." United States v. Davis, 508 F.3d 461, 463 (8th Cir.2007).  Judicial review of defense counsel's performance is "highly deferential," and is not used to second-guess a counsel's performance in hindsight.  Strickland, 466 U.S. at 689.  "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Polukhin's sworn testimony during the plea hearing contradicts her claim that her guilty plea was not knowing and intelligent.  Polukhin stated that she had sufficient time to consult with her attorneys prior to the plea hearing and that they had answered all her questions.  She also repeatedly assured the Court that she understood the proceedings and that she was guilty.

12

On this record, Polukhin cannot establish that her counsel's performance fell below an objective standard of reasonableness. Even if counsel's performance had been deficient, which it was not, Polukhin has not shown a reasonable probability that but for counsel's alleged errors she would not have pleaded guilty but would have proceeded to trial on the 30-count Indictment.

### d. Claim Four: Not Guilty

In Claim Four, Polukhin argues that her sentence and conviction must be vacated because she is not guilty of violating the Anti-Kickback statute. Polukhin contends that no referral occurred when she selected Best Aid to fill her prescriptions, because Best Aid was the only pharmacy in Minnesota capable of filling the prescriptions for the specialized compounded medications. Poluhkin argues that since no other pharmacy could fill or dispense the prescriptions, she was not acting as a decision-maker or making a referral when she selected Best-Aid to fill the prescriptions she had written.

Polukhin waived this claim by pleading guilty. Additionally, she chose not to raise this claim on direct appeal. Poluhkin may not use the extraordinary remedy of coram nobis as a substitute for raising the claim on direct appeal. See Azzone v. United States, 341 F.2d 417, 419 (8th Cir. 1965) ("Coram nobis may not be used as a substitute for an appeal.").

In addition to being procedurally barred, the claim fails on the merits. Polukhin cites no cases in which a treating physician who receives kickbacks in return for making referrals to a specific provider has been held not to be a decision-maker under the anti-kickback statute. Not only does the claim lack precedential support, it is contradicted by the record. Poluhkin admitted in a written statement that at one point she "began to investigate other pharmacies that could create the cream," but Rabichev "did not want to lose business from [her] patients." Presentence

Investigation Report ("PSR") [Docket No. 58] at 9.  As a result, Rabichev made payments to Polukhin's charitable trust so that she would continue using Best Aid rather than other pharmacies to fill the prescriptions.  Id. at 10.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Elena Lev Polukhin's Petition for Writ of Coram Nobis [Docket No. 91] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  February 5, 2021